MASSEY–FERGUSON, INC., Plaintiff,

v.

FARGO NATIONAL BANK, a corporation, Defendant.

Civ. No. 4192.

United States District Court
D. North Dakota,
Southeastern Division.

July 11, 1967.

E. T. Conmy, Jr., of Conmy, Conmy & Feste, Fargo, N. D., for plaintiff.

Philip B. Vogel, of Wattam, Vogel, Vogel, Bright & Peterson, Fargo, N. D., for defendant.

## MEMORANDUM OF DECISION

RONALD N. DAVIES, District Judge.

This non-jury diversity action was instituted by the plaintiff, Massey-Ferguson, Inc., to recover proceeds of checks made payable to Massey-Ferguson which were accepted by the defendant Fargo National Bank, upon the forged endorsement of Thomas A. Geering, then an employee of the plaintiff.

Massey-Ferguson, a Maryland corporation with its principal place of business in Michigan, maintains a branch sales office in Fargo, North Dakota. Employed at the sales office were a manager and, under his immediate supervision, ten district managers. Each of the district managers serviced approximately twelve of Massey-Ferguson's franchised dealer accounts in North Dakota. Part of this service included making periodic inventories of all new and used machinery in a dealer's possession and, whenever an inventory disclosed that a "floor planned"[1] item had been sold, assisting the dealer in preparing a settlement worksheet. The worksheets provided a simplified method for computation of the amount owed to Massey-Ferguson by the dealer on the item sold, the amount allowed by the dealer for machinery traded in, if any, by the purchaser and carried as a floor planned item in the dealer's inventory, and the payment to be made by the dealer to the plaintiff to close the floor planned account on that particular item. The district managers were authorized to accept payments from the dealers and were instructed to forward all receipts directly to Massey-Ferguson's zone office at Hopkins, Minnesota, where that company maintained its only depository for all funds received from the zone area, which included North Dakota.

On March 6, 1961, while Geering was employed at the Fargo sales office as sales training supervisor, he opened with the Fargo National a personal checking account styled "Thomas A. Geering, Expense Account". He deposited to this account checks made payable to himself by Massey-Ferguson to reimburse him for expenses incurred during the course of his employment.

On June 1, 1961, Geering was promoted to district manager and commenced servicing eleven of Massey-Ferguson's dealer accounts. On December 11, 1961, he deposited the first of numerous checks made payable to Massey-Ferguson in his personal account maintained with the Fargo National. The check, drawn on the Foster State Bank, Carrington, North Dakota, and made payable to the plaintiff, in the amount of nine hundred five dollars and eighty-six cents ($905.86), bore the signature of a Massey-Ferguson dealer as maker. The check carried the handwritten endorsement "Massey-Ferguson, Inc." followed by "T. A. Geering" and "Deposit only". The deposit slip shows that Geering received seventy-five dollars ($75.00) in cash with eight hundred thirty dollars and eighty-six cents ($830.86) being credited to his account. No inquiry was made by Fargo National to determine whether Massey-Ferguson had authorized Geering to endorse the check and to cash or to deposit the proceeds in his own personal account. This method, with minor variations in the endorsements, was used by Geering in handling the checks here in issue and in diverting

1. A method employed by the plaintiff to finance dealer inventories of new and used machinery. The loan is secured by the machinery while in the dealer's possession and the loan is either reduced or increased as machinery is sold or added to inventory.

the proceeds thereof to his own use. To prevent discovery by Massey-Ferguson, Geering would alter original worksheets sent to the zone office to show that no payment was due from a dealer or that the sums due were to be transferred on Massey-Ferguson's books from the dealer's floor plan accounts receivable to an open accounts receivable. When a copy of the worksheet was returned from the zone office to Geering for delivery to the dealer it would again be altered to conform with the dealer's records. Geering was not called as a witness by either party and the evidence is inconclusive as to why audits of Massey-Ferguson's books did not disclose the obvious discrepancies that must have existed between its records and that of its dealers over the period of time from December, 1961, until January, 1965.

The Fargo National first became aware of Geering's actions early in 1965 when a teller questioned his authority to cash or deposit a check made payable to Massey-Ferguson. In trying to ascertain it, an employee of Fargo National telephoned Massey-Ferguson's manager in the Fargo sales office and was informed that Geering lacked such authority. Pursuing the matter further, Fargo National contacted Massey-Ferguson's zone office in Hopkins and was again told that Geering had no authority to dispose of checks made payable to Massey-Ferguson. Fargo National thereupon closed Geering's account heretofore described.

An investigation of Geering's actions by Massey-Ferguson disclosed that sixty thousand eight hundred fourteen dollars and eleven cents ($60,814.11) had been diverted through his account and demand was made upon Fargo National for reimbursement which was refused. This action was then commenced to recover the total amount, less certain sums Geering had replaced or that had been recovered from other sources.

■ Massey-Ferguson relies upon the general rule that a bank which has obtained possession of a check on an unauthorized or forged endorsement of the payee's signature, and has collected the amount of the check from the drawee is liable for the proceeds thereof to the payee, notwithstanding the proceeds have been paid to the person from whom the check was obtained and notwithstanding that the payee's signature was forged by his employee or agent. Fidelity & Casualty Co. of New York v. First Nat. Bank & Trust Co., 71 N.D. 415, 1 N.W.2d 401, 407; 100 A.L.R.2d 670 (1965); Cf. Crisp v. State Bank of Rolla, 32 N.D. 263, 155 N.W. 78.

Fargo National raises as an affirmative defense, that Massey-Ferguson has been reimbursed by the bonding company which carried fidelity coverage on its employees and, as a result, Massey-Ferguson is not the real party in interest. As a corollary Fargo National moves to dismiss the complaint for failure to join the bonding company as an indispensable party.

A great deal of latitude was given Fargo National, during the course of trial, to establish this contention, but the evidence presented disclosed only that the bonding company had been advised of the loss and that Massey-Ferguson was proceeding directly against Fargo National. No formal claim was made to the bonding company for the loss nor was any attempt made to determine whether it was covered under terms of the bond.

Fargo National asserts that this is mere subterfuge to allow the bonding company to avoid the defense that a surety who has paid the loss has no right by way of subrogation to proceed against the bank unless there are facts from which it appears that in equity and good conscience the bank rather than the surety should stand the loss. Meyers v. Bank of America Nat. Trust & Savings Ass'n, 11 Cal.2d 92, 77 P.2d 1084. For a later analysis see Aetna Casualty & Surety Co. v. Lindell Trust Co., Mo.App., 348 S.W.2d 558.

■ In the absence of evidence showing the bonding company has paid the loss or that it has entered into an agreement with Massey-Ferguson contingent upon the outcome of this action, it neces-

sarily follows that Massey-Ferguson is the real party in interest and the bonding company is not an indispensable party. Cf. McNeil Construction Company v. Livingston State Bank, D.C., 185 F.Supp. 197, aff'd 9 Cir., 300 F.2d 88.

The remaining defenses asserted are that Geering had either apparent or implied authority to endorse the checks or that Massey-Ferguson is estopped by its actions from setting up want of authority on his part.

■ The defense of implied authority presupposes that Massey-Ferguson's conduct was such that Fargo National was justified in believing, and in acting upon the belief, that Geering had authority to endorse the checks. Fidelity & Casualty Co. v. First Nat. Bank & Trust Co., 71 N.D. 415, 1 N.W.2d 401; 100 A.L.R.2d 670 (1965). But the facts upon which the implied authority is said to exist were not known by the Fargo National until after Geering's lack of authority was discovered. During the entire period of time during which the checks were accepted the only information in the bank's possession concerning Geering's authority was knowledge of his employment by Massey-Ferguson as district manager. Even this meager knowledge was furnished by Geering. The mere fact that an employee has charge of a company's office does not entitle third persons dealing with the employee to assume that he has the authority to execute or endorse the company's negotiable paper. Gresham State Bank v. O and K Construction Co., 231 Or. 106, 370 P.2d 726, 100 A.L.R.2d 654; Brede Decorating, Inc. v. Jefferson Bank & Trust Co., Mo., 345 S.W.2d 156, 163.

■ A bank acting upon the endorsement of negotiable paper must ascertain the genuineness of the endorsement at its peril. Mackey-Woodard, Inc. v. Citizens State Bank, 197 Kan. 536, 419 P.2d 847. It is negligence for a bank to fail to act diligently in determining the genuineness of all signatures and the identity of its customers.

"In the ordinary case it seems proper that the negligent payor, rather than the negligent principal, should bear the loss caused by an agent's unauthorized endorsement of his principal's check. An important factor supporting this conclusion is the relative ease with which the payor, having knowledge of the agency, can ascertain the agent's authority, as compared with the difficulty with which an employee's dishonesty may be detected by his employer. The employer must overcome the obstacles which the employee devises for the very purpose of making it difficult to detect the defalcations. Certainly under the circumstances of the present case, it was more reasonable for the officers of the O and K Construction Company [Massey-Ferguson] to assume that their employee was honest than it was for Zimmerman [Fargo National] to assume that he had the authority to endorse checks and receive payment in cash for no ostensible corporate purpose." Gresham State Bank v. O and K Construction Company, 370 P.2d 726.

■ Nor did Geering have apparent authority to endorse the checks. Fargo National seeks to base an estoppel upon its practice of accepting the checks over a long period of time without objection by Massey-Ferguson, but an estoppel would not arise until Massey-Ferguson knew of this practice and thereafter Fargo National acted on Massey-Ferguson's knowledge. The bank cannot establish a custom and confer apparent authority upon an unauthorized agent by recognizing the agent's acts over a period of time and then relying upon this custom as conferring apparent authority, in the absence of knowledge of the custom by Massey-Ferguson. The doctrine of apparent authority is based upon an estoppel of the principal, and it is Massey-Ferguson's conduct and not the Fargo National's that raises the estoppel. The bank cannot rely on its own negligence of which Massey-Ferguson was unaware as a basis for estoppel against Massey-Ferguson. Industrial Plumbing & H. S. Co. v. Carter County Bank, 25 Tenn.App. 168, 154 S.W.2d 432. What has here

been said of the defense of apparent authority also disposes of the defense that Massey-Ferguson is estopped from denying Geering's authority to endorse the checks.

 Turning to the issue of damages, it is the bank's position that Massey-Ferguson has not shown entitlement to any part of the proceeds of the checks. This theory misplaces the burden. It was the bank's obligation to show that Massey-Ferguson suffered no loss through Fargo National's wrongful acceptance of checks which caused the loss. Industrial Plumbing & H. S. Co. v. Carter County Bank, 25 Tenn.App. 168, 154 S.W.2d 432; Saf-T Boom Corp. v. Union Nat. Bank of Little Rock, 236 Ark. 518, 367 S.W.2d 116; and it is questionable whether the bank is even entitled to raise this defense. Brede Decorating, Inc. v. Jefferson Bank & Trust Co., Mo., 345 S.W.2d 156.[2]

Massey-Ferguson seeks recovery for checks totalling sixty thousand eight hundred fourteen dollars and eleven cents ($60,814.11). Of this amount it was shown, and conceded by Massey-Ferguson, that thirteen thousand one-hundred ninety-five dollars and thirty-seven cents ($13,195.37) was recovered through replacements made by Geering at various times to cover his operations and prevent detection. Geering, in most instances, drew on his account maintained with the Fargo National to purchase cashier's checks payable to Massey-Ferguson with one of that company's various dealers as remitter.

Of the remaining checks which were accepted by Fargo National on the unauthorized endorsements, only those made payable to "Massey-Ferguson Coffee Fund" warrant comment. Though the evidence was that Geering prevailed upon one of the dealers to make the "Cof-fee Fund" payee, in truth and in fact the checks were in payment for machinery and other items received from Massey-Ferguson and it was the dealer's intention that the checks were in payment thereof.

Massey-Ferguson has established by a preponderance of the credible evidence, that it is entitled to recover from the defendant forty-seven thousand six hundred eighteen dollars and seventy-four cents ($47,618.74) plus interest from June 6, 1965,[3] the date that reimbursement was requested from Fargo National, and judgment will be entered accordingly.

This memorandum of decision is considered in compliance with Rule 52(a) Fed.Rules Civ.Proc.

Counsel for the plaintiff, Massey-Ferguson, will prepare and submit form of judgment, through the Clerk of this Court.

2. But see National Surety Corporation v. City Bank & Trust Co., 248 Wis. 32, 20 N.W.2d 559; Jomack Lumber Co. v. Grants State Bank, 75 N.M. 787, 411 P.2d 759.

3. Interest could be allowed from the time each check was accepted by the defend-ant, Weaver Construction Co. v. Farmers National Bank, 253 Iowa 1280, 115 N.W.2d 804; Gresham State Bank v. O and K Construction Co., 231 Or. 106, 372 P.2d 187, but Massey-Ferguson requests only that it commence on the date demand was first made for reimbursement.