William GABOVITCH[1]
vs.
**COOLIDGE BANK & TRUST CO.**

District Court Department
Appellate Division, Northern District
Trial Court of the
Commonwealth of Massachusetts

**April 11, 1980**

---

[1]As custodian for Ellis Z. Gabovitch.

William Gabovitch for the plaintiff.
Santo J. Ruma for the defendant.

Present: Cowdrey, P.J., Zoll & Feloney, JJ.

FELONEY, J. This is an action to recover $17,210.50 charged against the plaintiff-drawer's account with the defendant-bank as a result of the defendant's payment of five checks bearing alleged "incorrect, forged, fraudulent and unauthorized endorsements, improper on their face."

At trial there was evidence tending to show that: The plaintiff purchased Scotch malt whiskey which was to be delivered to bonded warehouses in Scotland. The proper product was never delivered. In payment for these purchases, plaintiff William Gabovitch drew four checks on his account with the defendant in October, 1972, in the aggregate amount of $15,110.50, and payable to "Scotch Whiskey, Ltd." These checks were paid by the defendant upon the stamped endorsement of "Scotch Whiskey, Inc."

In June, 1973, the plaintiff wrote a fifth check drawn on the defendant bank in the amount of $2,100.00 and payable to Barclays Bank of New York. This check was paid by the defendant upon the stamped entry "Barclays Bank of New York — Pay any bank P.E.G.," and the written endorsement "Scotch Whiskey, Ltd."

By letter dated October 1, 1974, the plaintiff informed the defendant that he had recently learned that the defendant had paid the checks upon incorrect or fraudulent endorsements. Copies of the checks were attached to the plaintiff's letter. On October 8, 1974, the defendant advised the plaintiff to return the checks to "correct the endorsements." The plaintiff never returned the originals, and the defendant-bank took no further action.

On September 30, 1975, and after commencement of this suit, the defendant forwarded copies of the plaintiff's checks to the collecting banks, Citizens Trust Co. and Barclays Bank of New York, for refund due to unauthorized payment. On October 10, 1975, Citizens Trust Co. notified the defendant that it denied liability on the basis that the defendant's claim was not made within a reasonable time.

The trial court found, inter alia, that "the plaintiff has failed to prove by a preponderance of the evidence that the endorsements were in fact unauthorized endorsements, and that the person or entity to whom payment was intended did not receive the proceeds of the checks." Judgment was entered for the defendant.

The plaintiff claims to be aggrieved by the trial court's denial of the following requested rulings:

"2. The defendant breached its contract in the customer-depository bank relationship by charging the plaintiff's accounts with items not 'properly payable.' G. L. c. 106, s. 4-401(1).

"3. The defendant paid its own funds when it paid on the forged endorsements and converted the funds of the plaintiff when it charged his accounts. G. L. c. 106, s. 3-419(1) (c).

"4. That the defendant is indebted to the plaintiff in the sum of seventeen thousand, two hundred ten dollars and fifty cents ($17,210.50) interest and costs."

It is well established that, subject to certain defenses,

"as between the drawer of a check and the bank upon which it is drawn the latter is bound at its peril to determine the genuineness of the endorsement upon which it is paid; it cannot . . . charge against the drawer's account a check payable to a named payee or his order and paid upon a forged endorsement."

The Columbian Peanut Co. v. Frosteg, 472 F.2d 476, 480 (5th Cir. 1973); Massey-Ferguson, Inc. v. Fargo Nat'l Bank, 270 F. Supp. 227, 230 (D.N.D. 1967); Dana v. Old Colony Trust Co., 245 Mass. 347, 349 (1923). This rule applies even in those instances where the unauthorized endorsement has been guaranteed by a collecting or intermediary bank. Jordan Marsh Co. v. National Shawmut Bank, 201 Mass. 397, 405 (1909).

The initial question is whether the endorsements on the five drafts were forged or unauthorized so as to render the defendant liable for their improper payment. G. L. c. 106, ss. 4-401(1), 3-419(1)(c). An unauthorized endorsement or signature is "one made without actual, implied or apparent authority and includes a forgery." G. L. c. 106, s. 1-201(43). The plaintiff contends that the stamped and written endorsements on all five checks paid by the defendant were unauthorized and improper on their face. The trial court found that the "plaintiff has failed to prove by a preponderance of the evidence that the endorsements were in fact unauthorized."

General Laws c. 106, s. 3-307(1) states: "When the effectiveness of a signature is put in issue (a) the burden of establishing it is on the party claiming under the signature; but (b) the signature is presumed to be genuine or authorized . . ." The defendant, as the party relying on the validity of the endorsements in question, was thus required to establish their genuineness. The defendant's evidentiary burden was one "of persuading the triers of fact that the existence of the fact is more probable than its non-existence." G. L. c. 106, s. 1-201(8). The defendant was aided in this regard, however, by the presumption of genuineness afforded by G. L. c. 106, s. 3-307(1)(b). A "presumption" under the Uniform Commercial Code signifies "that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its non-existence." The court was then entitled to rely in the defendant's behalf of the validity of the endorsements in question absent evidence by the plaintiff of forgery or lack of authorization. Union Nat'l Bank v. Cannato, 350 Mass. 767 (1966); Morris Plan Bank v. Caruana, 54 Mass. App. Dec. 8, 13 (1974).

The stamped endorsements of "Scotch Whiskey, Inc." on checks made payable to "Scotch Whiskey, Ltd." do not alone establish that said endorsements were fraudulent. The similarity of names here precludes any definitive ruling of forgery, and does not appear to conclusively rebut the presumption of validity afforded the defendant under s. 3-307(1)(b). See, e.g., Watertown Federal Sav. & Loan Assoc. v. Spanks, 346 Mass. 398, 399 (1963); Phipps v. Little, 213 Mass. 414, 416 (1913). The report fails to disclose the actual name or trade name of the whiskey distributor with whom the plaintiff in fact dealt, other than to identify the payee of the plaintiff's drafts as "Scotch Whiskey, Ltd." If in fact "Scotch Whiskey, Inc." is but another designation or trade name for Scotch Whiskey, Ltd., the stamped endorsements in the former name would have been proper and valid. G. L. c. 106, s. 3-203.[2] Similarly, a written endorsement of "Scotch Whiskey, Inc." were ment of "Scotch Whiskey, Ltd." on plaintiff's check dated June, 1972 would not necessarily indicate that the subsequent stamped endorsements of "Scotch Whiskey, Inc." were forged. See G. L. c. 106, ss. 3-203, 3-401(2).[3] Again, the plaintiff has failed to introduce any evidence relative to the actual name or identity of the company with whom he dealt, and who was not only the named but also the intended payee of his October, 1972 checks.

The only other evidence advanced by the plaintiff relative to the alleged fraudulent endorsements of his drafts was that the particular scotch whiskey he ordered was not in fact delivered. The report does not, however, disclose the nature and degree of the variance between the ordered and the received product. A difference in quantity, quality, brand, or cost would not be material if the substituted merchandise was in fact received from the intended payee of the drafts, Scotch Whiskey, Ltd. Such evidence thus remains inconclusive at best. Moreover, no evidence on this issue was introduced beyond the plaintiff's oral testimony which the trial justice was free to disbelieve or reject. Moroni v. Brawders, 317 Mass. 48, 56 (1944);

[2]General Laws c. 106, s. 3-203: "Where an instrument is made payable to a person under a misspelled name or one other than his own he may endorse in that name or his own or both; but signature in both names may be required by a person paying or giving value for the instrument."

[3]General Laws c. 106, s. 3-401(2): "A signature is made by use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature."

Karas v. LeVay, 38 Mass. App. Dec. 179, 187 (1967).

Misnomer of a corporation in a written instrument is not material or vital in its consequences if the identity of the corporation intended is clear or can be ascertained by proof. **Melledge v. Boston Iron Co., 59 Mass. (5 Cush.) 158 (1849).** If the corporate entity is the same, the acts and instruments of the corporation are not nullified by slight departures from its true name. **Chew v. First Presbyterian Church of Wilmington, Del., 237 F. 219 (Del. 1916).** Whether the corporate entity is the same is to be determined from the face of the writing itself, taken in connection with the facts and circumstances surrounding the transaction. **Id.** Error in using the word "Company" for "Corporation" or vice versa is not a material misnomer of the corporation. **Simpionbato v. Royal Ins. Co., 253 Mass. 606 (1925).**

Thus it would appear that in accordance with the trial court's finding, the plaintiff has failed to establish by a preponderance of the evidence that the endorsements in question were unauthorized. Uniform Commercial Code Comment 1 to G. L. c. 106, s. 3-307 states that the quantum of proof imposed upon the plaintiff herein is not that "sufficient to require a directed verdict in his favor, but it must be enough to support his denial by permitting a finding in his favor." The principal issue thus remains not whether the plaintiff established the fraud or forgery alleged, but whether he has advanced sufficient evidence to rebut the presumption of genuineness established by G. L. c. 106, s. 3-307(1)(b), and to shift the burden of proof to the defendant. As noted above, no one aspect of the plaintiff's evidence would appear alone adequate to impose the burden of proof upon the defendant. The record does not require, nor does it support, the ruling sought by the plaintiff that the signature was not genuine or was unauthorized.

The defendant contends, and the trial court so found, that the plaintiff is not entitled to recover herein due to his failure to establish that the intended payees did not receive the proceeds of the drafts in question. The general rule in this area is that:

"even though a drawee bank pays a check of a depositor on the forged endorsement of the payee named therein, if the proceeds are received by the payee, no recovery can be had against the bank by the drawer, for the reason that if the person entitled to receive the proceeds actually receives them or the benefit of them, the drawer has suffered no loss and the technical breach of duty by the bank has occasioned no harm."

**Arlington Trust Co. v. Montgomery Banking & Trust Co., 278 F.Supp. 106, 111 (E.D.Va. 1968).** See also **Santa Maria v. Industrial City Bank & Banking Co., 326 Mass. 440, 444 (1950); Gordon v. State St. Bank & Trust Co., 46 Mass. App. Dec. 86, 90 (1971),** affd. **361 Mass. 258, 261 (1972); Gotham-Vladimir Adv., Inc. v. First Nat'l City Bank & Chemical Bank, 277 N.Y.S.2d 719 (1967).**

It is essential to note, however, that contrary to the trial court's implicit ruling, the burden of proof is upon the drawee-bank to allege and establish the above affirmative defense. **Murphy v. Metropolitan Nat'l Bank, 191 Mass. 159, 162 (1906).**

The absence of any positive testimony that the checks went to the wrong merchant leaves the plaintiff's grievance one of the quality of the whiskey he received. That the money reached the intended seller, who sent the wrong product, must have been inferred by the trial justice, although he made no finding to that effect. The evidence powerfully tends toward such a conclusion.

The ultimate findings and rulings of the trial judge are amply supported by the record.

The report is dismissed.