EXCHANGE BANK OF WILCOX, APPELLEE, v. NEBRASKA UNDERWRITERS INSURANCE COMPANY, APPELLANT.

FILED APRIL 13, 1909. No. 15,589.

Insurance: TRANSFER OF TITLE: NOTICE. In a suit on fire insurance policies covering certain personal property, and conditioned that a change in the title of the property should avoid the policy, notice to the company of a bill of sale made by the insured to a bank was attempted to be shown from the knowledge of such bill of sale possessed by the agent of the company, who at the time was also assistant cashier of the bank. *Held,* That, while notice to an agent will generally be imputed to his principal, the rule does not apply where the agent's duty to his principal is opposed to his own interest or conflicts with the interest of another party for whom he acts in the transaction where knowledge is obtained.

APPEAL from the district court for Kearney county. ED
L. ADAMS, JUDGE. *Reversed.*

*Halleck F. Rose, Wilmer B. Comstock* and *Hague &
Anderbery,* for appellant.

*J. L. McPheely, contra.*

DUFFIE, C.

Action by the plaintiff on three policies of insurance
issued by the defendant.   Judgment for the plaintiff,
and defendant appeals.

The facts are practically undisputed. One Frank 'Lan-
gloss was the owner of a restaurant in the town of Wilcox,
and procured two of the policies in question upon his stock
and fixtures.   He 'sold his business to Long & Jackson, and
assigned to them the two policies.   Long & Jackson took
out a third policy upon the stock and fixtures, and after-
wards sold the business to Hall & Hartley, to whom the
three policies were transferred.   One Charles W. Lam-
born, residing at Wilcox, was a recording agent for the
defendant company, and issued these three policies and
approved the several transfers made.   When Hall & Hart-
ley purchased the restaurant, they borrowed $667.95 from
the plaintiff bank and executed a bill of sale upon all the
property covered by the insurance as security therefor.
This was about the middle of May, 1906.   The insured
property was destroyed by fire July 13, 1906.   It is alleged
in the plaintiff's petition that the three policies of insur-
ance were verbally assigned to the bank as additional se-
curity for the loan made at the date of said loan. Lam-
born, the agent of defendant company, was also assistant
cashier of the plaintiff bank, and it quite clearly appears
that the policies were left either in his possession or in the
possession of the bank from the time of their issue.   About
the 20th of July one Lynde, an adjuster for the defendant,
visited Wilcox for the purpose of securing information
concerning the loss, and called upon Lamborn, who, as

before stated, was assistant cashier of the bank. Lamborn produced the policies for Lynde's inspection, and among them Lynde discovered the bill of sale. Each of the policies contained conditions making it void "if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage, or if any change other than by the death of the insured takes place in the interest, title or possession of the subject of insurance, whether by legal process of judgment, or by voluntary act of insured, or otherwise, or if the property above mentioned (meaning the property insured) be or shall be thereafter mortgaged or otherwise incumbered."

On discovering that Hall & Hartley had executed a bill of sale covering the insured property to the bank by way of security, Lynde informed Lamborn and the insured that its effect was to void the policies, and he took no further steps in the matter until he had prepared a writing and secured the signature of Hall & Hartley to the effect that any steps which he might then take should be regarded as an effort to ascertain the amount of the loss and report the same to his company, and that his action was without reference to any other question or matter of difference within the terms and conditions of the several policies. On the 2d of August, 1906, Lynde returned to Wilcox, and proof of loss was made in the name of Hall & Hartley and verified before Lamborn as notary public. The proof of loss does not disclose any interest claimed by the bank in the policies. Lynde at all times, as he claims, denied any liability on the part of the company, but offered to pay Hall & Hartley $200 in settlement of their claim, telling them that he would prefer to give them this amount rather than undergo the expense of a suit, which he estimated would cost them about the same sum. Not being able to effect a settlement during the day, Lynde went to the hotel and retired about 8 P. M., as he wished to take an early train in the morning, and about 9 o'clock Hall & Hartley called upon

him and proposed to settle for $250, which proposition
was accepted and the amount paid by a draft drawn by
Lynde upon his company. This amount was paid by
Lynde without any knowledge, as he asserts, that the
bank claimed any interest in the policies, although the
evidence is somewhat conflicting upon that point. He
knew that the policies were in possession of the bank, but
Hartley testified that they were there for the purpose of
settlement, and Lynde says he understood that they were
left at the bank for that purpose. Lamborn does not in
terms deny this, but on his direct examination says:
"Well, he (Lynde) asked me as agent what I knew about
the loss, and I told him I had the policies there, and
Hall & Hartley owed the bank money, and we had a bill
of sale which had never been recorded; that it was a per-
sonal matter, and stated the case as fully and completely
as I knew." On his cross-examination he said: "I told
Mr. Lynde that Hall & Hartley had left the policies there
with me for settlement. Q. You didn't tell him at any
time that the policies were assigned after the fire? A.
Yes; no written assignment; just a verbal agreement be-
tween Hall & Hartley. Q. I understood you to say on
direct examination that the policies were left there for
adjustment by you. Now, which will you have it? A.
Well, I don't remember of saying adjustment any more
than settlement. Settlement is what they were left there
for. Q. Now, that is what you told Mr. Lynde, is it?
A. Yes, sir. Q. And this conversation occurred after
the fire? A. Yes, sir."

It is conceded that the defendant company had no
actual notice of the bill of sale made by Hall & Hartley
to the bank until after the fire, and the principal dispute
arises upon the effect that should be given to the knowl-
edge of Lamborn, the agent of the defendant company,
and who, at the same time, was the assistant cashier of
the bank. The plaintiff asserts that knowledge of the
agent, who, it is conceded, was present when the bill of

11

sale was made, and had knowledge of all the facts, is notice to the defendant company; while the defendant asserts with equal vigor that knowledge of Lamborn cannot be imputed to the company, as his interest as an employee and officer of the bank was adverse to the interest of the defendant company.

As a general rule the knowledge of an agent is imputed to his principal. In *Kennedy v. Green*, 3 Myl. & K. (Eng.) *699, Lord Brougham gave as a reason for the rule "that policy, and the safety of the public, forbids a person to deny knowledge while he is so dealing as to keep himself ignorant, * * * and yet all the while let his agent know, and himself, perhaps, profit by that knowledge." The same reason, framed in different language, is given by Church, C. J., in *National Life Ins. Co. v. Minch*, 53 N. Y. 144: "The rule which charges the principal with what the agent knows is for the protection of innocent third persons." Like most other legal rules, this one has its exceptions, and one of the exceptions is that a corporation is not chargeable with the knowledge nor bound by the acts of one of its officers in a matter in which he acts in behalf of his own interest, and deals with the corporation as a private individual, and in no way representing it in the transaction. *Koehler v. Dodge*, 31 Neb. 328; *Buffalo County Nat. Bank v. Sharpe*, 40 Neb. 123. Another exception to the rule is recognized in *Houghton & Co. v. Todd*, 58 Neb. 360, where it is said: "The rule whereby an agent's knowledge is imputed to his principal is subject to an exception in the case of an agent who is engaged in an independent fraudulent scheme without the scope of the agency." We think it may be regarded as well established that where an agent's duty to his principal is opposed to or even remotely conflicts with his own interest, or the interest of another party for whom he acts, the law will not permit him to act, nor will it hold his acts or his knowledge gained in such transaction obligatory upon his principal. That the execution of the bill of sale rendered void

policies conditioned as are those in question was held in
*Farmers & Merchants Ins. Co. v. Jensen,* 56 Neb. 285, and
in *Home Fire Ins. Co. v. Collins,* 61 Neb. 198.  To the same
effect are *Johansen v. Home Fire Ins. Co.,* 54 Neb. 548,
and *Seul v. Farmers & Merchants Ins. Co.,* 59 Neb. 253.

In this condition of the case it is evident that unless
the knowledge of Lamborn may be imputed to the com-
pany, and a waiver of the conditions of the policies im-
plied from such knowledge, then the plaintiff's action
must fail.  The bank must be charged with knowledge of
the conditions of the policies prohibiting a transfer of
title of the property insured.  It knew that in accepting
the bill of sale the policies were made void, unless the
company was notified and consented thereto.  It was the
duty of the bank to inform the company that it was about
to take this security and to obtain its assent.  To keep
secret the proceeding and to attempt to collect the poli-
cies would be a fraud upon the company.  A like duty was
cast upon Lamborn, the agent of the company, but it ap-
pears that the adverse interest cast upon him as an officer
of the bank kept him silent, and that same adverse inter-
est creates an exception in the application of the general
rule of law imputing knowledge and notice of the agent
to his principal.  We do not wish to be understood as
charging either the bank or Lamborn with a scheme to
defraud the insurance company.  At the time of taking
this bill of sale it is probable that no thought of the con-
sequences arose in the minds of the officers acting for the
bank, and yet it was a moral fraud upon the company to
take security upon property insured, without the consent
of the defendant company first obtained.  The result is
that, under the circumstances, the knowledge of Lamborn
cannot, under all the authorities, be imputed to the de-
fendant company, as his position as an officer of the bank
rendered his interest in the transaction adverse to the
insurance company.

We recommend a reversal of the judgment and remand-

ing the cause for further proceedings not inconsistent with this opinion.

EPPERSON, GOOD and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

REVERSED.