## SMITH v. COURANT COMPANY et al.

### (136 N. W. 781.)

**Corporations — authority — admissibility of evidence — bills and notes.**

1. One S. was employed to edit a newspaper and manage a printing plant belonging to defendant, for a short time. In the conduct of the business he made collections and deposited them to the credit of the defendant in a bank, and drew checks on the account to pay bills for help and supplies. On the termination of his employment the account in the bank was overdrawn, and the checks which he had drawn in payment for help were cashed by S. from money in his hands as agent of his wife, the plaintiff, with her knowledge of all the facts, and the checks indorsed to her. After his connection with the defendant ceased, such checks were dishonored by the bank for want of funds, and payment thereon was refused by defendant. This action is brought upon thirty-three such checks. The defense is a general denial. On the trial the court refused to permit defendant to introduce evidence tending to show an agreement between it and S. that he was to be limited in his expenditures for the conduct of the business to profits or receipts from the business. As such evidence would have shown want of authority on the part of S. to draw checks in excess of the profits or receipts, such ruling constituted reversible error.

**Corporations — agents — adverse interests — bills and notes — authority.**

2. When S. was employed by defendant a disagreement arose as to the compensation he should receive for his services, defendant refusing to agree to pay the sum demanded, and the amount to be paid him was left for future determination. No further agreement was ever reached thereon. Among the checks

Note.—On the question how far a corporation is charged with knowledge of managing officer engaged in illegal act, see note in 2 L.R.A.(N.S.) 993.

in suit were a number drawn to S., signed by him in the name of defendant, and indorsed to plaintiff, and paid to him out of funds belonging to plaintiff, without the knowledge of defendant. *Held*, that inasmuch as he was, at the same time, acting for the defendant in his own behalf and as agent for the plaintiff, and their interests were in conflict, his acts in the premises were not the acts of the defendant.

*Held, further*, that he had no right, under the facts disclosed, to fix his own compensation at the sum which the defendant had refused to pay, and that for this reason the checks drawn in his favor were drawn without authority, and are not the checks of the defendant.

**Bills and notes — bona fide holder.**

3. *Held*, under the facts, that plaintiff was not a holder of the checks in suit in due course.

**Corporations — authority — ratification.**

4. On the facts recited in the opinion it is *held*, that there was no ratification of the acts of S. in issuing and honoring the checks in suit, and that, not having knowledge that he was doing so, defendant was not estopped to question his authority.

Opinion filed May 14, 1912.

Appeal by defendant Courant Company from a judgment of the District Court for Bottineau County; *Crawford,* Special Judge, in plaintiff's favor and from an order denying a new trial in an action on certain checks.

Reversed.

*Noble, Blood, & Adamson,* for appellant.

The business manager of a corporation does not have authority to bind the corporation as maker of commercial paper, unless authority has been specifically conferred upon him. Topeka Capital Co. v. Remington Paper Co. 61 Kan. 1, 57 Pac. 504; Edwards v. Carson Water Co. 21 Nev. 469, 34 Pac. 381; Oak Grove & S. N. Cattle Co. v. Foster, 7 N. M. 650, 41 Pac. 522; Craft v. South Boston R. Co. 150 Mass. 207, 5 L.R.A. 641, 22 N. E. 920; Sanford Cattle Co. v. Williams, 18 Colo. App. 378, 71 Pac. 889; Bank of Commerce v. Baird Min. Co. 13 N. M. 424, 85 Pac. 970; Baines v. Coos Bay Nav. Co. 45 Or. 307, 77 Pac. 400; Elwell v. Puget Sound & C. R. Co. (Wash.) 35 Pac. 376; Herman v. Martineau, 1 Wis. 151, 60 Am. Dec. 368.

*Weeks, Murphy, & Moum,* for respondent.

Evidence is ample to establish the authority of Ed. A. Smith to issue checks for the Courant Company. Leekins v. Nordyke, 66 Iowa, 471, 24 N. W. 1; Story, Agency, 9th ed. §§ 97, 1060.

A principal is generally bound by the contracts made for him by his agent, and acts of the agent in connection therewith, while acting in the course of his employment and within the scope of his actual or apparent authority. 31 Cyc. 1566; Phillips v. Mercantile Nat. Bank, 140 N. Y. 556, 23 L.R.A. 584, 37 Am. St. Rep. 601, 35 N. E. 932; Pochin v. Knoebel, 63 Neb. 768, 89 N. W. 264; Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 19 L. ed. 1008; 31 Cyc. 1585; Whitaker v. Kilroy, 70 Mich. 635, 38 N. W. 606.

Defendant cannot repudiate these checks after having voluntarily accepted the benefits from the transaction in which they were issued. Morris v. Ewing, 8 N. D. 99, 76 N. W. 1047; Nichols, S. & Co. v. Shaffer, 63 Mich. 599, 30 N. W. 383; Eikenberry v. Edwards, 67 Iowa, 14, 24 N. W. 570; Gardner v. Warren, 52 Mich. 309, 17 N. W. 853; Vaughn v. Sheridan, 50 Mich. 155, 15 N. W. 62; Miles v. Ogden, 54 Wis. 573, 12 N. W. 81; Strasser v. Conklin, 54 Wis. 102, 11 N. W. 254; Wright v. Vineyard Methodist Episcopal Church, 72 Minn. 78, 74 N. W. 1015; Oberne v. Burke, 50 Neb. 764, 70 N. W. 387; 1 Am. & Eng. Enc. Law, 2d ed. 1195; Hoosac Min. & Mill. Co. v. Donat, 10 Colo. 529, 16 Pac. 157.

A corporation, like a natural person, may ratify, affirm, and validate any contract made or act done in its behalf which it was capable of making or doing in the first instance. 10 Cyc. 1069, 1076; Bank of Columbia v. Patterson, 7 Cranch, 299, 3 L. ed. 351; Saline County v. Gage County, 66 Neb. 846, 92 N. W. 1050, 97 N. W. 583; Bishop v. Fuller, 78 Neb. 259, 110 N. W. 715; Moody & M. Co. v. Leek, 99 Wis. 49, 74 N. W. 572; German Nat. Bank v. First Nat. Bank, 59 Neb. 7, 80 N. W. 48; Holmes Booth & Haydens v. Willard, 125 N. Y. 75, 11 L.R.A. 170, 25 N. E. 1083; Pittsburgh, C. & St. L. R. Co. v. Keokuk & H. Bridge Co. 131 U. S. 371, 33 L. ed. 157, 9 Sup. Ct. Rep. 770.

SPALDING, Ch. J., This appeal is from an order denying a new trial and from a judgment in favor of the plaintiff, rendered by the dis-

trict court of Bottineau county. The complaint sets out thirty-three causes of action, each upon a check drawn in the name of the Courant Company, a corporation, by Ed. A. Smith, Manager. The complaint simply alleges the incorporation of the defendant, and that the defendant issued each of the several checks on the Bottineau County Bank to the parties therein named, and for the respective amounts; their indorsement by the payees, and that they came into hands of the plaintiff for value in the ordinary course of business; their presentation to the bank for payment, and refusal for lack of funds in the account of the defendant to meet them and each of them, and their presentation to the defendant for payment, and refusal.

To this complaint defendant answered, admitting its incorporation and denying each and every other allegation of the complaint. At the conclusion of the plaintiff's case, defendant moved for a directed verdict. This motion was denied, whereupon defendant asked leave to file an amended answer which, in addition to the denials contained in the original answer, stated that the checks were drawn in the name of the defendant, by one Smith; that he had no authority from the defendant to sign his name to said checks. This answer contained another allegation, but in view of our conclusion regarding certain of the checks in suit we need not determine whether the court erred in denying defendant's request to amend its answer. Aside from the last proposition, it was nothing more than an amplified statement of the defense contained in the first answer.

In view, also of our conclusion, we need not pass specifically upon the denial of the motion for a directed verdict. Most questions are answered by our general conclusions. Most of the checks in suit were given to pay employees engaged in the work incident to a printing office and the publication of a newspaper which said Smith was engaged in publishing and managing on behalf of defendant. The remainder of these checks were made payable to Smith himself. All were indorsed by the payees, respectively, to the respondent, Katie M. Smith. Ed. A. Smith, her husband, had in his possession a sum of money belonging to her. From this money he paid these checks. At the time of their issuance there was no money to the credit of defendant in the bank.

After all the evidence was submitted, each party moved for a di-

rected verdict. The court discharged the jury and made findings of fact and entered judgment for the plaintiff for the full amount. The record discloses 109 assignments of error, but nearly all of them may be classed as relating to the general subjects which we shall determine, and they need not be treated separately.

In June, 1906, Ed. A. Smith, the husband of plaintiff, was engaged by the defendant corporation to work upon its newspaper, the Bottineau Courant. The evidence tends to show that the corporate records were in Minneapolis, Minnesota, at the time of the trial, but, be that as it may, they were not produced by the defendant to show the terms of the employment of Smith. He testified that, by a resolution of the board, he was employed as manager of the printing plant. Some of the directors testified that he was employed as editor of the newspaper, but that they supposed he would hire the help, buy the stock, and pay the bills. No limitations upon his authority, in the premises, were expressly proven, if any were agreed upon. He continued in their employ. until the following January. At the time of his engagement he demanded $30 per week for his services; the directors or officials thought $100 per month adequate. They failed to agree on his compensation, but decided to leave it for future determination. There is evidence tending to show that he was to receive no compensation except from profits. He drew checks payable to himself, from time to time, at the rate of $30 per week, and they were paid out of plaintiff's money. All this was done without the knowledge of defendant.

On Smith leaving defendant's employment he turned over to some of the officials of the corporation papers and accounts; among them a statement of his account with the corporation, including these checks. No action was ever taken on these statements, so far as disclosed, but the treasurer told him that he thought they would be all right, and one other officer gave him some similar intimation, a short time before defendant refused payment.

We think the court may have reasonably concluded that in the conduct of a business of this nature, employing more or less labor, making purchases from time to time, and all that, that the man who was conducting the business would, from necessity and for convenience, keep a bank account and draw checks on it, and that this principal must have known or contemplated this. If he were not to do so he would not be con-

ducting business in the manner in which it is usually conducted. Smith testified that when he first assumed the management of the plant he indorsed and deposited a check in the bank on which these checks were drawn, the indorsement being made in the name of the Courant Company, by Smith as manager; that while making such deposit the banker showed the indorsement to and inquired of one of the directors of the defendant, who was present, if that was all right, and was informed that it was. This is denied by that director. On a conflict the court may have been justified in finding that it occurred. Smith also testified that another director was in the printing plant when he was printing the checks with the signature, "The Courant Company," printed thereon, with a blank line on which was room for a signature, followed by the printed word "manager;" and that such director saw such blank checks. These facts justified the court in assuming that some of defendant's directors knew that Smith was drawing checks in the name of the defendant, though he may have had no express authority for doing so.

It is not pretended that he was conducting the plant for his own profit or benefit, or that he was to pay the bills out of his own funds. He was conducting it for and on behalf of the defendant, and it appears that the defendant and its officials and directors practically turned it over to him and gave it no oversight or attention whatever. In fact, the record shows that from June until the time Smith's connection with defendant ceased, no meeting of the directors was ever held, and it is not shown that anyone ever gave him instructions as to the conduct of the business. It is not denied that he was to pay the bills of the defendant, and the testimony of one of defendant's directors, V. B. Noble, was to the effect that there was no way definitely specified in which the help should be paid, except that he (Smith) was to settle the bills; that practically all the arrangements were made between Smith and himself on behalf of the company; that Smith "was to attend to the business of the Courant Company, pay the help and bills, and receive compensation up to the amount that we might agree on later." That they never finally agreed on any amount, but that there was a dispute as to whether it would be $100 a month or $30 a week, which was never settled.

In the course of the trial the defendant sought to show by means

of questions propounded to witnesses that the agreement with Smith had limited him to paying the help out of the profits of the business. Objection was made to the introduction of evidence to show this, and such objections were sustained. We think these rulings were erroneous. While as a general rule the officer, agent, or employee of a corporation has no power to borrow money or issue negotiable paper and set it afloat without express authority, yet, we are disposed to think, on the evidence received alone, the defendant must have contemplated that Smith should keep a bank deposit in its name, and that if he did so it would be necessary for him to issue checks in the same name by means of which he could pay help and bills for supplies, etc.

The evidence received may possibly warrant the further conclusion, by implication, that it was contemplated that he would borrow money temporarily, as, for instance, if the collections from the business for one week were inadequate to pay the help for that week that he should be permitted to raise funds for such purpose, to be repaid when the receipts of the business made it possible. Helena Nat. Bank v. Rocky Mountain Teleph. Co. 20 Mont. 379, 63 Am. St. Rep. 628, 51 Pac. 829. It is unnecessary to decide these questions, yet, if his contract of employment with the defendant limited his expenditures to the profits or receipts derived from the business as the defendant attempted to show, such contract would be a limitation upon his authority to draw checks in the name of defendant, and such checks as he might draw in excess of the receipts would be unauthorized, and not the act of defendant. Hence the evidence excluded was material to the issue, and vitally so. Defendant made an offer to prove, by one Noble, who was the director and officer with whom most of the details of the arrangement with Smith were made, as he testified, that, under the agreement between Smith and defendant, Smith was to pay the help and the bills as they came due, out of the proceeds of the business of the defendant, and that Smith was to receive as his compensation, such an amount as might be agreed upon, in cash, but that in no event should the amount received by said Smith exceed the profits of the business; and that the business as conducted by him showed no profits, and that there never were any profits to pay the exhibits offered in evidence; namely, the checks which are the subject of the litigation. It was shown that the account of the defendant was largely overdrawn at the bank when the

checks in suit were drawn. It is clear, therefore, that the court was in error in denying the offer made by defendant, as if such agreement had been proven, all the checks in controversy must have been issued without authority.

There is an additional reason why recovery cannot be had upon a number of the checks sued upon. It is shown that they were issued to Ed. A. Smith, the husband of the plaintiff. He was acting at the same time for the corporation in his own behalf and as agent for the plaintiff, his wife. No agreement had been reached as to his compensation; in fact the record shows that there had been a disagreement, and that it was left open for further consideration and future agreement or determination. The interests which he represented were clearly in conflict, and hence his acts in the premises were not the acts of appellant, and appellant is not bound thereby. Exchange Bank v. Underwriters' Ins. Co. 84 Neb. 110, 133 Am. St. Rep. 614, 120 N. W. 1010; Herman v. Martineau, 1 Wis. 151, 60 Am. Dec. 368.

He took it upon himself to pay himself at the rate which the defendant had expressly refused to sanction when the agreement for his employment was made. Until an agreement might be reached as to his compensation, he had no right to fix it in accordance with his own ideas, and either pay himself from the funds of defendant or issue its negotiable paper therefor.

It is contended very strongly that the acts of Smith as manager had been ratified by defendant. We are unable to so find. In our statement of the evidence we have given all that we find having any tendency to show a ratification. No habit of borrowing money for the corporation was shown of which any knowledge of any of its officers is disclosed; and the mere fact that one or two of the directors saw his statement of account, after the employment ceased, or expressed opinions that they thought it would be all right, but before the corporation refused to honor the checks in controversy, is insufficient to constitute a ratification. Neither is there sufficient to estop defendant from alleging a lack of authority. It is nowhere shown that defendant had accepted the fruits of the paper with any knowledge of the facts; and had the evidence been admitted which we have heretofore referred to, as far as this court knows, an express limitation on Smith's authority

in the premises might have been shown. Plaintiff was in no sense a holder of the checks in due course.

It must not be overlooked that this action is strictly upon the checks; and in holding, as we are compelled to hold, we expressly disclaim passing upon the merits of any controversy which might arise in some other form of action. The judgment herein is not to be considered as a bar to further and appropriate proceedings. The judgment of the District Court is reversed and a new trial granted.