**FARGO NATIONAL BANK, a Corporation, Appellant,**

v.

**MASSEY–FERGUSON, INC., Appellee.**

**No. 19075.**

United States Court of Appeals
Eighth Circuit.

Aug. 29, 1968.

John D. Kelly, of Wattam, Vogel, Vogel, Bright & Peterson, Fargo, N. D., for appellant; Philip B. Vogel, Fargo, N. D., on brief.

Charles A. Feste, of Conmy, Conmy & Feste, Fargo, N. D., for appellee; E. T. Conmy, Fargo, N. D., on brief.

Before MEHAFFY, GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

This is a diversity suit brought by Massey-Ferguson, Inc. against Fargo National Bank to recover proceeds of checks made payable to Massey-Ferguson, Inc. and either cashed at the Fargo National Bank or deposited to a personal account in said bank by the latter's district manager by unauthorized endorsements. One T. A. Geering, Massey-Ferguson's district manager, converted these funds over a period of time extending from December 11, 1961 until early in 1965. The checks were drawn on various banks by dealers, made payable to Massey-Ferguson, Inc., and given to Geering as the district manager in payment of accounts with Massey-Ferguson. Geering would endorse Massey-Ferguson's name followed by his signature and endorse "deposit only" on the checks. The proceeds were deposited in Geering's personal checking account in the Fargo National Bank. Investigation disclosed that $60,814.11 had been thus diverted into Geering's hands. The suit was tried before the Honorable Ronald N. Davies in the District Court of North Dakota without a jury. The court entered judgment against the Bank in the sum of $47,618.74 plus interest from June 6, 1965, the date of demand by Massey-Ferguson against the Bank. The full facts and findings are set forth in the district court's opinion, 270 F. Supp. 227 (D.N.D.1967), and need not be repeated here.

Fargo National Bank urges on appeal (1) that since Massey-Ferguson was fully covered for the loss by a surety company there can be no recovery against the Bank under the doctrine of "compensated surety"; (2) that since Geering had both ostensible and implied authority to negotiate checks on Massey-Ferguson's behalf, Massey-Ferguson is precluded from recovery; (3) that Massey-Ferguson was negligent and is thereby precluded from recovery; (4) that Massey-Ferguson was not entitled to sue for "conversion" since the checks cashed were not issued in payment of obligations due and owing it; (5) that the

trial court failed to give proper credit for all replacement funds; and (6) that Massey-Ferguson is not entitled to interest before judgment.

We find no merit in the Bank's claims and affirm the judgment.

■ Massey-Ferguson's cause of action is premised on the general rule that a bank acting upon an endorsement of negotiable paper must ascertain the genuineness of the endorsement at its own peril. If the instrument is forged or unauthorized the bank is liable for proceeds to the payee. 100 A.L.R.2d 670. This is the rule in North Dakota. See Fidelity & Cas. Co. v. First Nat'l Bank & Trust Co., 71 N.D. 465, 1 N.W.2d 401, 407 (1941).

■ (1) The doctrine of compensated surety rests upon the theory that a surety who has paid a loss has no standing to subrogate unless equitable considerations dictate otherwise. We agree with the trial court's analysis. No decision need be rendered as to whether this doctrine constitutes the law of North Dakota, since the district court found no evidence that the surety paid or had entered into any agreement with Massey-Ferguson dealing with this case. Under the circumstances, Massey-Ferguson is clearly the real party in interest and entitled to bring this claim.

■ (2), (3) The Bank's claim that Geering had either ostensible or implied authority to negotiate checks was argued before the district court and rejected. The trial court held that Geering's role as district manager did not in any way cloak him with the implied authority to negotiate checks drawn to Massey-Ferguson. The record clearly justifies this conclusion.

■■ Ostensible authority relates to the acts of the principal which, either intentionally or by lack of ordinary care, induce third persons to accept the agency as one of fact although there has been no express or implied authority given to the agent. See N.D.Cent.Code § 3–02–02 (1959). The Bank's argument that Massey-Ferguson held Geering out as having ostensible authority is based upon Geering's authorization to collect the checks from the dealers. Controlling this contention, as well as the Bank's argument that Massey-Ferguson was negligent was N.D.Cent.Code § 41–02–23 (1959), which provided:

"Forged signature—Effect. Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." [1]

Massey-Ferguson's alleged preclusion from enforcing this right against the Bank is related to principles of estoppel under North Dakota law. Olsgard v. Lemke, 32 N.D. 551, 156 N.W. 102 (1916); First Nat'l Bank v. Plante, 60 N.D. 512, 235 N.W. 135 (1931). In Loff v. Gibbert, 39 N.D. 181, 166 N.W. 810, 811–12 (1918), the North Dakota Supreme Court, in discussing elements of estoppel, said:

"An equitable estoppel arises when one by his acts, representations, or ad-

1. On July 1, 1966, the Uniform Commercial Code was adopted in North Dakota and this section was repealed. A similar provision of the U.C.C. reads:

"Unauthorized signatures.—1. Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unau-

thorized signer in favor of any person who in good faith pays the instrument or takes it for value.

"2. Any unauthorized signature may be ratified for all purposes of this chapter. Such ratification does not of itself affect any rights of the person ratifying against the actual signer." N.D.Cent. Code § 41–03–41 (1959).

missions, or by his silence when he ought to speak out, intentionally *or through culpable negligence* induces another to believe certain facts to exist and such other *rightfully relies* and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." (Emphasis ours.)

See also Tostenson v. Ihland, 147 N.W. 2d 104 (N.D.1966). Estoppel to deny Geering's authority requires reliance of the Bank on the acts or admissions of the principal, Massey-Ferguson. Conklin v. North Am. Life & Cas. Co., 88 N. W.2d 825 (N.D.1958). Under these circumstances, unless the Bank *relied* upon Massey-Ferguson's alleged culpable conduct in dealing with its agent, Massey-Ferguson is estopped neither by its alleged negligence nor by the ostensible or implied authority allegedly given to its agent. Cf. Smith v. Courant, 23 N.D. 297, 136 N.W. 781 (1912).

■■ In terms of negligence, unless Massey-Ferguson's acts *proximately caused* the Bank's acceptance of the forged endorsement, the Bank cannot avail itself of the statutory defense of preclusion as to Massey-Ferguson's recovery. This is explained in a recent Fourth Circuit case R. Mars, The Contract Co. v. Massanutten Bank, 285 F.2d 158, 161 (4 Cir. 1960), where the Court of Appeals said:

> "When an instrument is offered for negotiation or deposit, the primary obligation to determine whether there is a forged endorsement therefore rests on the bank, and hence negligence of the payee effective to bar recovery must be such as *directly* and *proximately* affects the conduct of the bank, contributing to and inducing its acceptance of the forged endorsement itself." [2]

The court there held that the "unbusinesslike conduct of the Company's affairs and the lack of careful supervision of its employees were facts too remote from the Bank's acceptance of forged endorsements to be the proximate cause of loss resulting from such endorsements."

■ Therefore, even assuming that Massey-Ferguson was negligent or that its conduct warranted a finding of ostensible authority conferred upon its agent, this would not bar recovery, since the trial court found that Massey-Ferguson's conduct did not in any way induce the Bank to rely blindly on the genuineness of Geering's endorsement. There is no argument that the trial court's findings are clearly erroneous. The only question before us is whether the district court correctly applied local law. We find no deficiency in that respect.

■ Of additional significance here is the trial court's finding that the Bank itself was negligent in failing to investigate Geering's authority to negotiate the checks. The record discloses that Massey-Ferguson did not have an account at the Bank, that the Bank acted solely upon the representations of Geering himself and did not at any time (until 1965) take any action to investigate Geering's authority.

Since under North Dakota law the trial court found the Bank was negligent, ostensible authority, even if established, would not relieve it from liability. Section 3–03–03 of N.D.Cent.Code (1959) reads:

> "When Ostensible Authority Binding.—A principal is bound by acts of his agent under a merely ostensible authority *to those persons only who* in good faith and *without ordinary negligence* have incurred a liability or parted with value upon the faith thereof." (Emphasis ours.)

See Fargo Nat'l Bank v. Agricultural Ins. Co., 184 F.2d 676 (8 Cir. 1950).

---

2. Cf. U.C.C. § 3–406, now adopted in North Dakota as § 41–03–43, which sets up an estoppel if the payee "substantially contributes" to the making of an unauthorized signature.

**228**

(4) The Bank argues that all of the checks were not ·for obligations due and owing Massey-Ferguson and therefore not subject to an action for conversion. However, " 'The law of conversion * * * is concerned with *possession*, not title, conversion being an offense against possession of property. *It may be either direct or constructive * * *.' "* (Emphasis ours.) Leach v. Kelsch, 106 N.W.2d 358 (N.D.1960); see also Christensen v. Farmers State Bank, 157 N.W.2d 352 (N.D.1968). And cf. § 31–11–03 N.D.Cent.Code (1959) which creates a "disputable presumption" "that money paid by one to another was due the latter."

We fail to see merit in the Bank's argument.

 (5) Defendant Bank claims that it was entitled to a credit for two replacement sums of $1,629.20 and $301.23. The trial court did not allow this credit. We have examined the record and cannot hold that the trial court's rejection of the credit was clearly erroneous. Although Massey-Ferguson had the burden of proving the sums converted, the defendant Bank had the burden to prove the credit once the total theft was credibly shown. On the status of the present record, we perceive no error in the court's finding.

 (6) Last of all, defendant complains of the award of interest from the date of plaintiff's demand. Again North Dakota law is controlling. Section 32–03–04 N.D.Cent.Code (1959) reads:

> "Interest on damages.—Every person who is entitled to recover damages certain or *capable of being made certain by calculation*, the right to recover which is vested in him upon a particular day, also is entitled to recover interest thereon *from that day*, except for such time as the debtor is prevented by law or by the act of the creditor from paying the debt." (Emphasis ours.)

The court's award was not erroneous. In fact, as the trial court notes, interest could have been allowed from the date each check was accepted by the defendant. This is clear from the statute itself.

Judgment affirmed.