**Harry M. WILLIAMS**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al.**

**No. 82–2460.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 9, 1983.

Decided Nov. 29, 1983.

Harry Toussaint Alexander, Washington, D.C., for appellant.

David G. Dulansey, Pittsburgh, Pa., with whom John C. Swanson, Washington, D.C., was on brief, for appellee, Washington Metropolitan Area Transit Authority.

Mark A. Rosen, Washington, D.C., for appellee, Local 689, Amalgamated Transit Union, AFL–CIO.

Before WRIGHT, WALD and EDWARDS, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

The appellant, Harry M. Williams, brought suit in federal district court against both his former employer, the Washington Metropolitan Area Transit Authority (WMATA), and his union, Local 689, Amalgamated Transit Union, AFL–CIO, charging each with discrimination under Title VII of the Civil Rights Act of 1964, § 701 *et seq.,* Pub.L. No. 88–352, 78 Stat. 253 (1964) (codified as amended at 42 U.S.C. § 2000e *et seq.* (1976)). The district judge found that Williams had failed to comply with the filing requirements set forth in 42 U.S.C. § 2000e–5.[1] She therefore granted defendants' motions to dismiss, or, in the alternative, for summary judgment.

The question on appeal is whether the district court erred in ruling that there was no genuine issue of material fact so as to preclude summary judgment.[2] We hold

---

1. In order to bring an action in federal court for a Title VII violation, the following requirements must be satisfied:

    A) A complainant who initially files with an authorized state or local agency must file a charge with EEOC within 300 days after the alleged unlawful employment practice, or within 30 days after receiving notice that the local agency has terminated its proceedings, whichever is earlier. 42 U.S.C. § 2000e–5(e).
    B) The complainant must have received a "right to sue" notice. *Id.* § 2000e–5(f)(1).
    C) The complainant must institute the civil action within 90 days after receiving such notice. *Id.* § 2000e–5(f)(1).

2. In this case, the district judge granted defendants' motions to dismiss, or, in the alternative, treated them as motions for summary judgment, which she also granted. Because the trial judge, in issuing her order, relied on the entire record, instead of simply the pleadings, we view the decision below as a summary judgment. *Mazaleski v. Treusdell,* 562 F.2d 701 (D.C.Cir.1977); *Richardson v. Rivers,* 335 F.2d 996 (D.C.Cir.1964); *Potrero Hill Community Action Comm. v. Housing Auth. of City & County of San Francisco,* 410 F.2d 974 (9th Cir.1969). Therefore, we must examine whether any genuine issue of material fact existed

that the district court did err because there are outstanding issues of fact that relate to whether the District of Columbia Office of Human Rights (DCOHR or OHR) was the actual agent of the Equal Employment Opportunity Commission (EEOC) for filing purposes, or whether OHR had the apparent authority to accept charges on behalf of EEOC.

Accordingly, we vacate the district court ruling and remand for further proceedings consistent with this opinion.

## I. FACTS

Appellant was dismissed from his job on December 15, 1976. On March 28, 1977, he filed a charge of discrimination against his former employer, WMATA, with OHR. Approximately three and one-half months later, he amended his charge to include the union.

OHR eventually found probable cause to believe that WMATA, but not the union, had engaged in a discriminatory practice. On July 25, 1979, after an unsuccessful conciliation attempt by OHR, but before any hearing on the allegations, OHR informed the appellant of a ruling by the District of Columbia Office of Corporation Counsel that OHR lacked jurisdiction over WMATA and that it could proceed no further on his claim. Appellant's Exhibit F. The following three years, during which Williams did not file a charge directly with the EEOC, were marked by procedural confusion. According to an affidavit submitted by Williams, for example, the EEOC continued to reassure him for more than a year after appellant received the July 25, 1979 letter that it was working on his complaint. Affidavit of Harry M. Williams (Aug. 20, 1982). In addition, according to the record in its current state, appellant could get no definitive word from EEOC as to the status of his right-to-sue notice until February 22, 1982. Appellant's Exhibit M. Nonetheless, Williams filed this action in district court in June, 1982.

After analyzing the events that occurred between July 25, 1979 and the initiation of court action by Williams on June 21, 1982, the trial court found that appellant had failed to comply with the statutory prerequisites to the commencement of a Title VII court action or to establish a case for "equitable tolling" of these prerequisites. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). At the same time, however, the court found that OHR had a contractual agreement to cross-file complaints with EEOC, Memorandum Opinion, September 29, 1982, at 5; *see* Appellant's Exhibit O. It concluded nonetheless that the agreement was irrelevant since "the record [did] not indicate that plaintiff detrimentally relied on it." *Id.* at 5.

In reaching this conclusion, the district court missed the point. If, in reality, the agreement established OHR as an agent of EEOC for filing purposes, the statutory EEOC filing requirement was in fact satisfied. Whether the agreement between OHR and EEOC did create an actual agency relationship is an issue of material fact that should be resolved. Also, even if the strict legal conditions of an actual agency relationship did not exist, the factual issue of whether OHR had the "apparent authority" to accept filings on behalf of EEOC should be resolved.

## II. DISCUSSION

### A. *Standard of Review*

A motion for summary judgment may be granted only when it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In ruling on a summary judgment motion, the court must draw all inferences from the record in the light most favorable to the party opposing the motion. *United States*

between the parties. Fed.R.Civ.P. 56(c); *Poller v. Columbia Broadcasting Sys., Inc.,* 368 U.S.

464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

*v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam).

Indeed, "the record must show the movant's right to [summary judgment] 'with such clarity as to leave no room for controversy,' and must demonstrate that his opponent 'would not be entitled to [prevail] under any discernible circumstances.'"

Summary judgment is unavailable if it depends upon any fact that the record leaves susceptible of dispute.

*National Association of Government Employees v. Campbell,* 593 F.2d 1023, 1027 (D.C.Cir.1978) (footnote omitted) (quoting *Nyhus v. Travel Management Corporation,* 466 F.2d 440, 440 (D.C.Cir.1972)). This is the standard both at trial and on appeal. *Weiss v. Kay Jewelry Stores, Inc.,* 470 F.2d 1259 (D.C.Cir.1972); *Libby v. L.J. Corp.,* 247 F.2d 78 (D.C.Cir.1957).

B. *Filing With OHR As Satisfying the Required Filing With EEOC*

█ In a case with facts remarkably similar to the one before us today, the District Court for the District of Columbia held that a genuine factual issue did exist as to whether the EEOC filing had been properly made, and accordingly denied a summary judgment motion with respect to a Title VII claim. In *Lamont v. Forman Brothers, Inc.,* 410 F.Supp. 912 (D.D.C.1976), the plaintiff charged his former employer with violations of numerous civil rights provisions. Among those asserted violations was a Title VII claim, which Lamont had lodged with DCOHR soon after he was fired. Despite the alleged existence of "an understanding" between DCOHR and EEOC that the former would timely cross-file its complaints with the EEOC, EEOC did not receive Lamont's charge until approximately

**3.** Appellant's Exhibit O is a sworn statement from the person who served as director of DCOHR at the time appellant's claim was filed. In it, the director stated:

Cross-filing of cases is done pursuant to a contractual agreement between the EEOC and a 706 agency, such as the Office of Human Rights. The contract requires that all Title VII complaints filed with a 706 agency be also filed with EEOC, by the 706 agency.

one and one-half years after the allegedly discriminatory incident took place, apparently because of an administrative foul-up at DCOHR. Defendant moved for dismissal of the Title VII charge, asserting that Lamont had failed to lodge a timely complaint with the EEOC.

The district court denied defendant's motion. It held that "Mr. Lamont should not suffer dismissal of his Title VII claim if he was misled by DCOHR or if filing with DCOHR amounted to filing with the EEOC according to the established procedures of those agencies." 410 F.Supp. at 916. In so doing, the court rejected a summary dismissal on two levels. It ruled that dismissal of Lamont's charge was improper, apparently because OHR might have been the agent of EEOC for filing purposes or because OHR might have had the apparent authority to accept charges on behalf of EEOC. If either were the case, filing with OHR would constitute filing with EEOC, and the statutory filing requirement would be met.

In the case before us, the existence of evidence in the record to support these two "agent" and "apparent authority" theories, particularly when viewed in the light most favorable to appellant, makes summary judgment improper.

1. *Agency Theory*

Reminiscent of *Lamont,* Appellant's Exhibit O,[3] the affidavit indicating that OHR had a "contractual agreement" to cross-file with EEOC, suggests that the local agency might have been an agent of EEOC for filing purposes. Numerous cases have found such agency relationships to exist, both between a federal and a state agency and between two federal agencies. *See,*

. . . .

Cross-filing the complaint with EEOC was not Mr. Williams' responsibility and it was not Mr. Williams' fault that his complaint was not cross-filed with the EEOC.

There is no question that DCOHR was and continues to be an authorized "local [§ 706] agency" for purposes of 42 U.S.C. § 2000e–5(e). *See* EEOC Deferrals to State and local authorities, 29 C.F.R. § 1601.12(m) (1976).

*e.g., Reynolds Metals v. Rumsfeld,* 564 F.2d 663 (4th Cir.1977) (recognizing the validity of a Memorandum of Understanding between the EEOC and the Office of Federal Contract Compliance (OFCC), which provided that complaints filed with the latter should be deemed filed with the former), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 84 (1978); *Kahn v. Pepsi Cola Bottling Group,* 526 F.Supp. 1268, 1269 (E.D.N. Y.1981) ("By checking a box on the bottom of the charge form, plaintiff indicated that he also charged Pepsi Cola with violating Title VII and authorized the State Division to accept his Title VII complaint on behalf of the EEOC."); *Hall v. Board of County Commissioners of Frederick County,* 509 F.Supp. 841, 844 (D.Md.1981) ("Under the work sharing agreement in force when plaintiff filed her state charge, the EEOC had designated the [state commission] as 'an agent of EEOC for the purpose of receiving charges on behalf of EEOC.'"); *McDonnell Douglas Corp. v. Marshall,* 465 F.Supp. 22, 29 (E.D.Mo.1978), *aff'd sub nom. Emerson Electric Co. v. Schlesinger,* 609 F.2d 898 (8th Cir.1979); *State Division of Human Rights on Complaint of Fitzhugh v.*

*Monroe,* 88 Misc.2d 16, 386 N.Y.S.2d 317, 320 (N.Y.Sup.Ct.1976) ("By a Memorandum of Understanding between the [state] Division and the Commission in 1972, the Division . . . is constituted a filing agent by the Commission."). In addition, the apparent use by OHR of EEOC forms [4] may indicate that OHR was an EEOC agent for filing purposes.

Because the district court did not pass on the actual agency question, we remand for determination of that issue.[5]

### 2. *Apparent Authority Theory*

■ Moreover, remand is necessary to determine whether OHR possessed the *apparent* authority to act on EEOC's behalf in this case.[6] Unlike actual agency, which exists whether or not the third party knows of or suspects an agency relationship, apparent agency depends in large part upon the representations made to the third party and upon the third party's perception of those representations.[7] In other words, in the present case, one of the questions the district court must ask is whether Williams detrimentally relied on OHR's apparent au-

**4.** *See* Appellant's Exhibit A (DCOHR complaint sheet with an EEOC "Form 5" attached). *See infra* note 10.

**5.** Not even the district court's conclusive finding at this preliminary stage of the litigation that the appellant did not detrimentally rely on OHR would invalidate appellant's case, if OHR were, in fact, an agent of EEOC for filing purposes. The legal relationship between an agent and a principal exists whether or not the third party (in this case, Williams) relies on it or is cognizant of it. *See* Restatement (Second) of Agency § 4 comment c (1958) ("The disclosure of the existence or identity of the principal subsequently has no bearing on the relations created at the time of the transaction [between the agent and the third party]."); H. Reuschlein & W. Gregory, Agency and Partnership § 6(C) (1979).

**6.** "Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Restatement (Second) of Agency § 8 (1958). Apparent authority

is entirely distinct from authority, either express or implied. The power to deal with

third persons which results from it may, however, be identical with the power created by authority as it is where the principal's statements to the third person are the same as to the agent and are similarly interpreted. . . . [A]pparent authority exists only with regard to those who believe and have reason to believe that there is authority . . . .

*Id.,* comment a.

The "apparent authority theory has long been settled in the federal system," *American Soc'y of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.,* 456 U.S. 556, 567, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982), especially where its application would further congressional intent, *id.* at 570, 102 S.Ct. at 1944.

**7.** "Apparent authority exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized. Further, the third person must believe the agent to be authorized." Restatement (Second) of Agency § 8 comment c; *see Menendez v. Saks & Co.,* 485 F.2d 1355, 1362 (2d Cir.1973), *rev'd on other grounds sub nom. Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976).

thority to receive charges on behalf of the EEOC *at the time he lodged a charge with OHR.* The district court's sharp focus on the events that took place *after* the OHR filing, *see* Memorandum Opinion, September 29, 1982, at 2–3, supports its conclusion that the equitable tolling doctrine, established by *Zipes v. Trans World Airlines,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), does not operate to extend the period in which Williams was required to file with the EEOC up to the time when he actually filed this suit. However, summary judgment is precluded by the possibility that, when appellant went to file with the OHR on March 28, 1977, he relied on OHR's apparent authority to accept charges on behalf of EEOC.[8] Accordingly, we believe that a second issue of material fact must be resolved.

■ In determining whether OHR in this case was vested with the apparent authority of EEOC for filing purposes, the district court must remember that the creation and termination of apparent authority rests with the principal. Restatement (Second) of Agency §§ 27, 49 comment c, 125, 125 comment a (1958); H. Reuschlein & W. Gregory, Agency and Partnership § 23(c) (1979).[9] Evidence that EEOC created such apparent authority may include much of the evidence relevant to whether OHR was the actual agent of EEOC. *See* H. Reuschlein & W. Gregory, Agency and Partnership § 23 (Supp.1981) ("In many cases the same evidence may be relevant to theories of express, implied, apparent, and inherent authority."). The EEOC's February 22, 1982 letter to appellants' lawyer, in which EEOC recognized that it was only by dint of an administrative error that Williams' charge was never forwarded to it, would be relevant. Appellant's Exhibit M; *see* Appellant's Exhibit I. Also, the sworn state-

---

8. The inquiry into appellant's expectations at the time of filing is consistent with numerous cases which have recognized the authority of federal agencies other than EEOC to accept charges on EEOC's behalf. *See, e.g., Morgan v. Washington,* 660 F.2d 710, 712 (6th Cir.1981) (it was reasonable for plaintiff to file a discrimination charge with the Wage and Hour Office of the Federal Department of Labor instead of with EEOC); *Egelston v. State Univ. College,* 535 F.2d 752 (2d Cir.1976) (plaintiff's filing with the Office of Federal Contract Compliance (OFCC) constituted filing with EEOC); *EEOC v. Delaware Trust Co.,* 416 F.Supp. 1040 (D.Del.1976) (filing with OFCC constituted filing with EEOC).

9. Of course, apparent authority "can exist only as long as the third person ... continues reasonably to believe that the agent is authorized." Restatement (Second) of Agency § 125(a) comment b (1958). As noted *supra* page 1414, in July 1979 OHR informed Williams about the District of Columbia Corporation Counsel's ruling that OHR "lack[ed] legal jurisdiction to accept complaints of discrimination against the Washington Metropolitan Area Transit Authority." Appellant's Exhibit F. This letter might have put Williams on notice that reliance on OHR to process and cross-file his complaint was no longer reasonable. We note, on the other hand, that Williams' affidavit states that for a year following this letter he received assurances from EEOC that his "complaint was being considered and that [he] would be hearing from them in the near future." Affidavit of

Harry M. Williams ¶ 18 (Aug. 20, 1982). Such representations could certainly extend reasonable reliance, even in the face of the July 1979 letter. Next, in September 1980, Mr. Williams' attorney wrote to EEOC seeking advice on "the status of Mr. Williams' case," and noting that his client "has been unable to ascertain the status of [t]his matter." Appellant's Exhibit H. Later that month EEOC responded by letter stating that Williams' "charge was never cross-filed with this Agency." Appellant's Exhibit I. This letter did not state that Williams' claim could not still be cross-filed; rather, it concluded by stating "I trust the above is responsive to your inquiry and that you will let me know if you need additional information." *Id.* We therefore cannot say, viewing the existing record in the light most favorable to Williams, that the subsequent efforts to prompt OHR to forward Williams' case file to EEOC were unreasonable acts caused by misplaced reliance upon OHR's role in the regulatory scheme. In fact, the record appears to show that none of the players—neither Williams, OHR, nor EEOC—had a clear idea of the proper procedures to follow, *see* Appellant's Exhibits I, J, K, L; Affidavit of Harry M. Williams ¶ 18 (Aug. 20, 1982), until 1982, when it was too late for Williams to change his position and file a valid claim with EEOC. *See* Appellant's Exhibits M (February 1982 letter from EEOC informing Williams that it "do[es] not have the authority to issue [a right to sue] notice without a charge"), N (March 1982 letter from EEOC informing OHR that EEOC "cannot at this time" process Williams' charge).

ment from the OHR director (Appellant's Exhibit O) and the use by OHR of EEOC Form 5 as part of its intake procedure (Appellant's Exhibit A) may indicate that EEOC established apparent authority in OHR.[10] The district court also should consider that the EEOC need not have intentionally established a relationship with OHR in order to have vested apparent authority in the local agency. Indeed, the apparent authority of OHR to accept filings on behalf of EEOC may have sprung from the negligence of EEOC in failing to correct representations made by the local agency through the known use of such items as the EEOC form. *See Fargo National Bank v. Massey-Ferguson, Inc.,* 400 F.2d 223, 226 (8th Cir.1968); *Kamen & Co. v. Paul H. Aschkar & Co.,* 382 F.2d 689, 695 (9th Cir. 1967), *cert. dismissed,* 393 U.S. 801, 89 S.Ct. 40, 21 L.Ed.2d 85 (1968); H. Reuschlein & W. Gregory, Agency and Partnership

10. In addition to its use by OHR, EEOC Form 5 bears certain indicia that EEOC extended authority to the local agency, thereby giving rise to the possibility of either actual agency or apparent authority. For example, one portion of the form allows the in-take person to check a box indicating whether the charge was filed with a local agency. It is hardly logical that such a box exists for the benefit of the local agency, which obviously knows whether the charge has been lodged with it. Rather, the box exists to allow the EEOC, when reviewing complaints, to determine whether the charge was initially filed with the EEOC or a local agency. Such a determination is critical because of the premium placed by Congress on deferral to local agencies where possible. *See* 42 U.S.C. § 2000e–5(b), (c), (d). A second indication of EEOC's possible extension of actual agency and apparent authority is evident on the bottom right of the form, where STATE/LOCAL AGENCY is printed in block letters. This may indicate that EEOC knew or should have known that its forms were being used by local agencies.

11. Furthermore, if the district court did rule that appellant had, for purposes of the statute, filed with EEOC when he filed with OHR, the ruling would not contravene current agency policy, since the EEOC eventually promulgated 29 C.F.R. § 1601.13(b)(1) (1982):
    When a charge is initially presented to a § 706 Agency and the charging party requests that the charge be presented to the Commission, the charge will be deemed to be filed with the Commission upon expiration of 60 (or where appropriate, 120) days after a

§ 23(c) (1979); Restatement (Second) of Agency § 49 comment c, illustration 5 (1958).

### III. Conclusion

■ Our holding today reaffirms the general belief that the application of Title VII's procedural requirements be "animated by the broad humanitarian and remedial purposes underlying the federal proscription of employment discrimination." *Coles v. Penny,* 531 F.2d 609, 616 (D.C.Cir.1976). Our direction of remand for further factual determinations is consistent with the Supreme Court's "flexible approach toward filing requirements." *Egelston v. State University of Geneseo,* 535 F.2d at 755 n. 4 (citing *Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)).[11] It expresses no opinion as to what the result of those determinations should be.[12]

written and signed statement of facts upon which the charge is based was sent to the 706 Agency by registered mail or was otherwise received by the 706 Agency, or upon the termination of 706 Agency proceedings, or upon waiver of the 706 Agency's right to exclusively process the charge, whichever is earliest.

12. Another hurdle stands in the way of Williams' Title VII civil action. Under 42 U.S.C. § 2000e–5(f)(1), the receipt of a right to sue notice is a condition precedent to the initiation of a Title VII civil action. Since appellant never successfully filed a charge with the EEOC, the federal government did not issue a right-to-sue notice, and Williams never received one.

   If, on remand, the district court determines either that OHR was the actual agent of EEOC for filing purposes, or OHR had the apparent authority to accept charges on behalf of EEOC, Mr. Williams can then request and receive a right-to-sue notice during the pendency of this action. Receipt of a right-to-sue notice during the pendency of the Title VII action cures the defect caused by the failure to receive a right-to-sue notice before filing a Title VII claim in federal court. *See, e.g., Pinkard v. Pullman Standard,* 678 F.2d 1211, 1219 (5th Cir. Unit B 1982) (per curiam), *cert. denied,* —— U.S. ——, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983); *accord Fouche v. Jekyll Island-State Park Auth.,* 713 F.2d 1518, 1525 (11th Cir.1982); *Perdue v. Roy Stone Transfer Corp.,* 690 F.2d 1091, 1093 (4th Cir.1982); *Watson v. Fuller Brush Co.,* 570 F.Supp. 1299 (W.D.Mich.1983); *Black v. Brown Univ.,* 555 F.Supp. 880, 884 (D.R.I.1983).